UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

PARNELL SEATON,

        Plaintiff,                   Case No. 1:08-cv-524

v.                                        Honorable Janet T. Neff

B. BRINKMAN et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

        Shortly after the complaint was filed, Magistrate Judge Carmody reviewed the complaint under the above standard and recommended that the complaint be dismissed because it was barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Plaintiff filed objections, and, on November 20, 2008, this Court adopted the report and recommendation of the magistrate judge and dismissed the complaint.

Plaintiff appealed to the Sixth Circuit. On November 19, 2009, the Sixth Circuit issued an order vacating and remanding the case on the grounds that, because Plaintiff did not necessarily lose good-time credits as a result of his misconduct convictions, his civil rights action was not subject to the *Heck-Edwards* bar. Mandate has now issued and the matter is again before the Court. Upon review, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I. Factual allegations

Plaintiff Parnell Seaton presently is incarcerated with the Michigan Department of Corrections and housed at the Ionia Maximum Correctional Facility, though the actions he complains of occurred while he was housed at the Muskegon Correctional Facility (MCF). He sues the following MCF employees: Hearings Investigator B. Brinkman, Assistant Deputy Wardens M. Malone and Roxanne Thibault, and two officers holding unknown positions, J. Gregg and Lee A. Halbower.

Plaintiff alleges that, on September 5, 2005, he was attacked by prisoner Walls, who began stabbing Plaintiff. Plaintiff struggled with Walls, eventually obtaining control of the weapon and apparently stabbing Walls at some point. Officers Bisson and Povistak, responding to a call for assistance from Resident Unit Officer (RUO) Carpenter, intervened in the altercation, restraining Plaintiff and Walls. Plaintiff's wounds were dressed by an MCF nurse, and he was transported to Hackley Hospital for treatment.

In the early morning hours of September 6, 2005, Plaintiff was given a copy of a misconduct ticket issued by RUO Carpenter, charging Plaintiff with assault resulting in serious physical injury. Later that morning, Plaintiff was notified that the major misconduct report had been

amended to include a charge of possession of a weapon. Minutes later, Plaintiff was summoned to Defendant Brinkman's office and was asked to identify the questions he intended to submit to his witnesses, the documents he intended present in his defense, and the evidence he intended to use for his defense. Plaintiff requested that latent fingerprint analysis and DNA blood identification analysis be performed on the knife. His request was denied. Shortly thereafter, Brinkman interviewed Walls, who stated that he had been attacked without provocation and did not see who attacked him. Walls denied having any problems with other prisoners and said that he believed the incident was a case of mistaken identity. Plaintiff alleges that Brinkman then summarized Walls' statement and recorded the statement as having been made by RUO Carpenter.

Based on the alleged misinformation, the Security Classification Committee, composed of Defendants Malone and Thibault, met with Plaintiff on September 7, 2005. They asked Plaintiff to explain why Prisoner Willis was requesting to be placed in protective custody. Plaintiff denied knowing about the situation. Malone disclosed that Willis had alleged that unidentified prisoners were trying to kill him because they believed he had hired Walls to attack Plaintiff. The following day, Defendant Halbower prepared a Special Problem Offender Notice (SPON) regarding Plaintiff and forwarded it to Defendant Thibault for approval. Thibault approved the SPON.

At 9:30 a.m. on September 8, 2005, the Hearings Officer convened a disciplinary hearing on the merits of the misconduct charges against Plaintiff. Plaintiff pleaded not guilty and self defense. He reiterated his request for fingerprint and DNA analysis. The Hearings Officer refused the request for fingerprint analysis because the evidence would be repetitious and immaterial, given that Plaintiff had admitted that he had held the weapon and had stabbed Walls during the course of the altercation and he himself had been injured with the knife. Plaintiff alleges

that, because no officer witnessed the beginning of the assault and because he was denied the necessary laboratory analyses, he was improperly found guilty. As soon as the misconduct decision was issued, the Security Classification Committee reconvened and reclassified Plaintiff to restrictive administrative segregation at Ionia Maximum Correctional Facility (ICF), where he was transferred on September 9, 2005.

Plaintiff submitted a request for rehearing on the misconduct, which was delivered to the Hearings Administrator on September 13, 2005. Plaintiff also wrote to Colone Sturdivian of the Michigan State Police, requesting fingerprint and DNA analysis. In addition, Plaintiff submitted a request for a copy of the records contained in the hearing investigation file. Plaintiff received some responsive materials, including a copy of the Security Reclassification Notice. Based on the contents of the Security Reclassification Notice, Plaintiff filed a second request for rehearing, contending that, if Malone and Thibault possessed evidence that Walls had been hired by Willis to assault Plaintiff, that evidence should have been made available to Plaintiff during his disciplinary proceedings. Plaintiff filed a third request for rehearing on November 1, 2005, alleging that his disciplinary hearing had not been conducted in an impartial manner by an impartial hearings officer.

On November 7, 2007, Inspector Mascarro came to ICF to speak with Plaintiff. Mascarro told Plaintiff that he had discovered that Walls had been paid to assault Plaintiff and the identity of the persons procuring Walls' service had been identified. Mascarro also informed Plaintiff that he had discovered witnesses who had observed Walls' assault. Mascarro told Plaintiff that the evidence would be turned over to the Michigan State Police, along with a recommendation that the Muskegon County Prosecutor file criminal charges. Mascarro identified Inspector Betty Goodson as the liaison between Plaintiff and Mascarro. Plaintiff was transferred to Standish

Maximum Correctional Facility on December 7, 2005, where he was placed in restrictive administrative segregation. Plaintiff discovered in April 2006 that a SPON dated November 10, 2005 had been placed in his prison file.

On June 1, 2006, Plaintiff's request for rehearing was denied. Plaintiff filed a petition for judicial review of the administrator's June 1, 2006 decision. The petition was dismissed by the Wayne County Circuit Court on December 13, 2006. Plaintiff sought leave to appeal the decision, which was denied by the Michigan Court of Appeals on August 20, 2007. Plaintiff sought reconsideration of the order denying leave to appeal, which was denied on October 8, 2007. Plaintiff sought leave to appeal in the Michigan Supreme Court, but his appeal was terminated on December 13, 2007 because he failed to pay the partial filing fee as ordered by the court.

In his complaint, Plaintiff claims that he was denied his Fourteenth Amendment right to due process and his First Amendment right to seek redress of grievances by the actions of Defendants to falsify and suppress evidence and to engage in biased decisionmaking. He seeks injunctive relief and both compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains

- 5 -

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff alleges that he was denied due process when he was convicted of two major misconducts on the basis of false evidence and because exculpatory evidence was withheld. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that

misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

In the instant case, the Sixth Circuit concluded in its decision remanding the case that, because Plaintiff is serving eight terms of life imprisonment, three terms of 125 to 200 years of imprisonment, and multiple mandatory 2-year terms for felony-firearms convictions, he is not eligible for good-time credits under Michigan law. *See Seaton v. Brinkman et al.*, No. 09-1153 (6th Cir. Nov. 19, 2009) (citing *People v. Martin*, 363 N.W.2d 24, 25 (Mich. Ct. App. 1984); *Thomas v. Eby*, 481 F.3d 434, 439-40 (6th Cir. 2007) (interpreting MICH. COMP. LAWS §§ 800.33(3) & 800.33(5))). Moreover, Plaintiff himself acknowledges that he is not eligible for disciplinary credits. (*See* Pl. Obj. to R&R, docket #14 at 8 ("The Plaintiff is serving a life sentence and he isn't eligible to receive disciplinary credits . . . .").) As a consequence, the misconduct conviction cannot and does not affect the duration of his sentence. *See Sandin*, 515 U.S. at 486-87.

Further, Plaintiff cannot demonstrate that the issuance of a SPON, his placement in administrative segregation, and his confinement at Level V[1] amounts to an atypical or significant hardship that would implicate the due process clause. The *Sandin* Court concluded that mere

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Community Status, Levels I, II, III, IV, V, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ B (eff. Dec. 31, 2007). There are various types of segregation, including administrative segregation and detention. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶¶ L, Y (eff. Dec. 7, 2009). Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious escape risk. *Id.,* ¶ L. Detention, or "punitive segregation" can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*, ¶ Y. If possible, detention is served in a designated detention cell rather than in administrative segregation. *Id.* A prisoner may not remain on detention for a period longer than that ordered by the hearing officer. *Id.* The behavioral adjustment of a prisoner in segregation is reviewed periodically with the prisoner. *Id.*, ¶ HHH. Reclassification from administrative segregation occurs only with the approval of the Security Classification Committee. *Id.*, ¶ NNN. If the prisoner committed a serious assault, the approval of the Warden and the Regional Prison Administrator are also required. *Id.*

placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id*; *see also Jones v. Baker*, 155 F.3d 810, 812-23 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

In addition, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995)

(no constitutional right to remain at a specific facility or to prevent a transfer to another facility); Plaintiff has failed to make any allegations that would support a conclusion that his segregation is "atypical and significant." *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). Issuance of a SPON is nothing more than a security classification used by the prison. *See* MICH. DEP'T OF CORR., Policy Directive 03.03.110(E). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

### B. First Amendment

Plaintiff contends that he was deprived of his First Amendment right to petition government for redress of his grievances. He claims that Defendants did not give him access to all of the records from the administrative hearing or to the evidence collected by Inspector Mascorro, and they did not disclose exculpatory evidence during the administrative process. He therefore contends that the administrative and state judicial forums were rendered ineffective for addressing the issues he raised.

A prisoner has no constitutional right to a grievance procedure or other procedure voluntarily established by the state. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998). The Sixth Circuit has never held that an inmate has an independent constitutional right to file a misconduct appeal, apart from the First Amendment right not to be retaliated against for filing one.

Plaintiff's claim may be best understood as a claim that he was deprived of his right to access the state administrative process and state courts. Although it is clearly established that prisoners have a fundamental right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court has concluded that the right extends only to direct appeals, habeas corpus applications and civil rights claims. *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" to one of those types of actions. *Lewis*, 518 U.S. at 349. In addition, the underlying action the plaintiff seeks to bring must assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff asserts that Defendants violated his right to access the state courts by failing to reveal information and to properly investigate the misconduct charge, thereby rendering his state remedies ineffective. In other words, he argues that he had a First Amendment right to access the courts regarding his claim that his misconduct investigation and proceeding were not fair. The viability of Plaintiff's First Amendment claim, however, depends on the viability of the underlying claim that he has a right to a fair misconduct procedure. *See Lewis*, 518 U.S. at 349. A

claim of entitlement to a fair misconduct procedure is a claim of procedural due process. As the Court previously has discussed, Plaintiff did not have a liberty interest in his misconduct proceeding. If he had no right to due process in his misconduct proceeding, he had no right of access to the courts to raise the claim. *Lewis*, 518 U.S. at 353 (in order to have a right of access to the court, the underlying action must assert a viable claim). Plaintiff therefore fails to state a First Amendment claim.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: January 25, 2010  /s/ Janet T. Neff
Janet T. Neff
United States District Judge